UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FENF, LLC,

      Plaintiff,

v.

QUINGDAO CHENG HE XIN DIAN
ZI SHANG MAO CO., LTD.,

      Defendant.

_____/

Case No. 2:26-cv-10272

Honorable Susan K. DeClercq
United States District Judge

## OPINION AND ORDER GRANTING IN PART PLAINTIFFS' *EX PARTE* MOTION FOR TEMPORARY RESTRAINING ORDER (ECF No. 4) AND SETTING HEARING ON PRELIMINARY INJUNCTION

Before this Court is an *ex parte* Motion for a Temporary Restraining Order (TRO) and Preliminary Injunction (PI) filed by Plaintiff FenF, LLC ("FenF"), under the Lanham Act 15 U.S.C. § 1051 *et seq.* against Defendant Quingdao Cheng He Xin Dian Zi Shang Mao Co., Ltd. ("Quingdao"), for alleged trademark infringements. As explained below, the motion for a TRO will be granted and a hearing on the PI will be set.

## I. BACKGROUND

FenF is a company based in Dexter, Michigan that "sells foot-therapy products" on its website and through major retailers like Amazon.com, including a trademarked "Yoga Toes® GEMS® product" ("GEMS® product"). ECF No. 1 at

PageID.2–3. The GEMS® product is toe stretcher made of elastic material with upward posts or "handles" that feature a gemstone design atop the handles. *Id.* at PageID.3. FenF has a Federal Trademark Registration for the gemstone handle design. *Id.* at PageID.5–6; *see also* ECF No. 1-2. The GEMS® product is also in a distinctive sapphire blue color for which FenF has a second registered trademark. ECF No. 1 at PageID.3, 5; *see also* ECF No. 1-3.

FenF attests that it has spent over $5 million dollars to promote its Yoga Toes® products—which includes the GEMS® product. ECF No. 1 at PageID.3. The GEMS® product has been featured on several major television shows and in notable magazines and journals. *Id.* FenF states that its efforts and successes with its GEMS® product have landed FenF as "the number 1 seller on Amazon in its product category for over 3 years and the number 2 seller on Amazon for over 5 years." *Id.* at PageID.4.

According to FenF, Defendant Quingdao is advertising and selling a toe stretcher in a sapphire blue color with gemstones on elastic material posts that is identical to FenF's GEMS® product. *Id.* at PageID.6–8. FenF alleges that Quingdao's "product is an exact copy of [FenF's] registered faceted gemstone design and its registered color blue" such that Quingdao's product is a counterfeit of the GEMS® product. *Id.* at PageID.8–9.

On January 26, 2026, FenF sued Quingdao for infringing on its two trademark

registrations in relation to the GEMS® product, for counterfeiting the GEMS®
product, and for diluting FenF's trademarks for the GEMS® product. *Id.* at
PageID.9–13. That same day, FenF also filed an *ex parte* motion for a temporary
restraining order (TRO) and preliminary injunction (PI) to restrain Quingdao from
continued trade of its product and to freeze Quingdao's Amazon account to prevent
any fund transfers or evidence destruction. ECF No. 4. Quingdao has not been served
with or notified of the motion or the complaint. Because Quingdao has not yet been
heard in this matter, this Court will resolve the motion *ex parte*.

## II. LEGAL STANDARD

The Lanham Act authorizes courts to grant injunctions "according to the
principles of equity and upon such terms as the court may deem reasonable, to
prevent the violation of any right of the registrant of a mark registered in the Patent
and Trademark Office." 15 U.S.C. § 1116(a). Whether to grant a TRO or a PI is a
matter within the sound discretion of the district court. *See Certified Restoration Dry
Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 525, 540 (6th Cir. 2007); *see
also Dorsey v. Wilmington Savs. Fund Soc'y, FSB*, No. 24-10325, 2024 WL
1700992, at *3 (E.D. Mich. Feb. 29, 2024).

"Temporary restraining orders and preliminary injunctions are extraordinary
remedies" that should be granted only if the movant demonstrates that the
circumstances "clearly demand" it. *Koetje v. Norton*, No. 13-12739, 2013 WL

8475802, at *2 (E.D. Mich. Oct. 23, 2013); *see also Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). To determine whether to issue a TRO or a PI, courts consider the same four factors:

> (1) the movant's likelihood of success on the merits,
> (2) any irreparable injury to the movant without the injunction,
> (3) whether the balance of hardships favors the movant, and
> (4) whether the injunction would be adverse to the public interest.

*Muffler Man Supply Co. v. TSE Auto Serv., Inc.*, 739 F.3d 598, 602 (E.D. Mich. 2024) (citing *Overstreet*, 305 F.3d at 573). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on the irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *ABX Air, Inc. v. Int'l Bhd. of Teamsters*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016).

Civil Rule 65 also governs motions for TROs and PIs and states that courts can issue them "without written or oral notice to the adverse party" only when:

> (A) Specific facts in an affidavit or verified complaint clearly show the immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and
>
> (B) The movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

FED. R. CIV. P. 65(b)(1)(A)–(B). Courts may grant a TRO *ex parte* if immediate and irreparable harm is shown and the movant's attorney certifies why notice is not required. FED. R. CIV. P. 65(b)(1). TROs "should . . . preserv[e] the status quo only

[until] a hearing" can be held. *Vector Rsch. v. Howard & Howard Att'ys*, 76 F.3d 692, 696 (6th Cir. 1996) (quoting *First Tech. Safety Sys. v. Depinet*, 11 F.3d 641, 650 (6th Cir. 1993)).

## III. ANALYSIS

In consideration of the balancing factors and requirements under Civil Rule 65, this Court finds that FenF has sufficiently demonstrated entitlement to immediate *ex parte* relief and will grant the TRO and set a hearing for a PI.

### A. Likelihood of Success on the Merits

First, FenF alleges a likelihood of success on the merits because Quingdao continues to advertise and sell a product identical to FenF's trademarked GEMS® product. ECF No. 4 at PageID.44–46. For reasons provided below, this Court agrees.

"To establish a claim for trademark infringement for a registered trademark, a plaintiff must show that: (1) it owns the registered trademark, (2) the defendant used the trademark in commerce, and (3) the use was likely to cause confusion." *Bliss Collection, LLC v. Latham Cos.*, 82 F.4th 499, 506 (6th Cir. 2023). "[C]ontinued, unauthorized use of an original trademark [after] terminat[ion] is sufficient to establish 'likelihood of confusion.'" *Little Caesar Enters. v. Miramar Quick Serv. Rest. Corp.*, 2020 WL 4516289, at *3 (6th Cir. 2020) (cleaned up) (quoting *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1190 (6th Cir. 1997)).

Here, FenF has demonstrated ownership of its trademarks, *see* ECF Nos. 1-2; 1-3; and use of the marks by Quingdao, *see* ECF No. 1 at PageID.5–8. FenF has also demonstrated that its marks are strong in light of the product's unique color, design, and promotion in public outlets. *See* ECF No. 1 at PageID.3–4; *see also Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) ("A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source;' such acceptance can occur when the mark is unique, when it has received intensive advertisement, or both." (citation omitted)).

And given that Quingdao's product uses the same marks and is sold on the same platform, this is enough to establish a likelihood of confusion. *See Daddy's Junky Music Stores*, 109 F.3d at 280 (outlining guiding factors for the confusion analysis: the mark's strength, the products' relatedness, the marks' similarities, evidence of actual confusion, marketing channels used, the defendant's intent of choosing the mark, the likelihood of expanding production, and the likely degree of consumer care); *see also FenF, LLC v. Yogabody Nats., LLC*, No. 16-13483, 2017 WL 4841440, at *2 (E.D. Mich. Oct. 26, 2017) (finding in an analogous case involving FenF that there was a likelihood of confusion between FenF's GEMS® product and the defendant's identical toe stretcher product). Thus, FenF is likely to succeed on its trademark infringement claims, and this factor weighs in favor of granting the TRO. *See FenF*, 2017 WL 4841440, at *2.

## B. Irreparable Injury

Next, FenF argues that it will suffer irreparable injury without the TRO because it has already shown that there is "a likelihood of confusion" for consumers between FenF's trademarked GEMS® product and Quingdao's product. ECF No. 4 at PageID.60. This Court agrees.

"A plaintiff's harm from the denial of a preliminary injunction [or TRO] is irreparable if it is not fully compensable by monetary damages." *Overstreet*, 305 F.3d at 578. An injury will not be fully compensable by monetary damages "if the nature of the plaintiff's loss would make damages difficult to calculate." *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). But, the Sixth Circuit has held "that no particular finding of likelihood of entry or irreparable harm is necessary for injunctive relief in trademark infringement or unfair competition cases." *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th Cir. 1999). In fact, irreparable harm or injury "ordinarily follows when a likelihood of confusion or possible risk to reputation appears" because of the trademark infringement. *Id.*; *see also FenF, LLC v. Yogabody Nats., LLC*, No. 16-13483, 2017 WL 4841440, at *2 (E.D. Mich. Oct. 26, 2017).

Thus, because FenF has shown a likelihood of confusion between its GEMS® product and Quingdao's product, this factor weighs in favor granting the TRO. *See Choon's Design LLC v. Anhetoy*, No. 2:22-cv-12963, 2023 WL 2449485, at * 1–2

(E.D. Mich. Jan. 31, 2023) (making a determination on the "irreparable harm" element by considering whether there was a likelihood of confusion between the parties' productions at issue).

## C. Balance of Equities

Next, FenF argues that Quingdao "will not suffer much hardship, if any" by being restrained from violating FenF's trademarks because being unable to sell an infringing product is not a hardship. ECF No. 4 at PageID.60. On the other hand, FenF argues that it will suffer harm to its reputation and goodwill. *Id.* at PageID.60–61. After considering the balance of hardships, this Court finds that this factor weighs in favor of granting the TRO.

Considering whether granting the TRO would cause substantial harm to others is a fact-based inquiry. *Curtis 1000, Inc. v. Martin*, 197 F. App'x 412, 426 (6th Cir. 2006). "Others," in this inquiry, includes "defendants." *See id.*; *see also Kelly Servs. v. Eidnes*, 530 F. Supp. 2d 940, 952 (E.D. Mich. 2008). But restraining a defendant from conducting business with a product that violates a trademark is not a hardship for consideration because "[o]ne who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *BlephEx, LLC v. Myco Indus., Inc.*, No. 19-13089, 2020 WL 5951504, at *8 (E.D. Mich. Oct. 8, 2020) (internal quotation marks omitted) (quoting *Windsurfing Int'l Inc. v. AMF, Inc.*, 782 F.2d 995,

1003 n. 12 (Fed. Cir. 1986).

Here, FenF has established its own harm to its reputation and business if Quingdao continues to market and sell its product, and Quingdao's "hardship" of not being able to continue its business of selling this one product does not factor into this analysis because it elected to build its business on a product that appears to infringe on FenF's trademarks. *See id.* Thus, this factor favors a TRO. *See id.*

### D. Public Interest

Fourth, FenF argues that a TRO is warranted because there is a public interest in preventing consumer confusion and there would otherwise be no impact on the public by removing a duplicative but infringing product from the market. ECF No. 4 at PageID.62. The Sixth Circuit recognizes a public interest in "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006). These "two fundamental purposes of trademark law" are advanced by an injunction that restrains the sale of counterfeit products. *Id.* Because FenF has shown a likelihood of consumer confusion and marketplace deception regarding Quingdao's distribution of a product identical to FenF's trademarked GEMS® product, this factor weighs in favor of a TRO. *See id.*

### E. Entitlement to Immediate *Ex Parte* Relief

Lastly, FenF argues that it is entitled to immediate *ex parte* relief without

notifying Quingdao beforehand because Quingdao is likely to evade service or destroy evidence and assets if it is notified. This Court finds that FenF has provided sufficient support to forgo the notice requirements.

As noted, requesting a TRO without providing notice to the defendant is permissible only if the plaintiff provides specific facts that it will experience "immediate and irreparable harm" before the defendant can be heard, and the plaintiff provides reasons why it should not have to notify the defendant. *See* FED. R. CIV. P. 65(b)(1)(A)–(B). Where a plaintiff seeks *ex parte* injunctive relief against a party that "deliberately traffic[ks] in counterfeit merchandise," and that is likely to destroy evidence or hide assets, proceedings against that party "are often ineffective if notice is given to the adverse party prior to service." *N. Atl. Operating Co., Inc. v. Babenko*, No. 15-14013, 2015 WL 13542566, at *1–2 (E.D. Mich. Nov. 19, 2015) (granting an *ex parte* order to preserve records and assets that the defendants were likely to destroy, alter, or hide in the wake of litigation); *see also FenF, LLC v. Zhanjiang Yongxiao Info. Consulting Studio*, No. 25-12093, 2025 WL 2302134, at *2–3 (E.D. Mich. Aug. 8, 2025) (granting FenF's *ex parte* TRO without notice for the same reasons provided here as in the nearly identical case against a different Chinese company for violating its GEMS® product trademarks).

As previously established, FenF has provided specific facts of immediate and irreparable injury in its affidavits and verified complaint that satisfy the first

requirement under Civil Rule 65(b)(1)(A). *See* FED. R. CIV. P. 65(b)(1)(A). FenF also satisfies the requirement under Civil Rule 65(b)(1)(B) because it provided plausible reasons why notice to Quingdao should not be required, stating that if Quingdao were notified, Quingdao would likely disappear and reappear later, "cancel its online accounts, dispose of or hide its business records, transfer or otherwise dispose of assets obtained from its infringement, move the locations of its infringement operations, move critical evidence (including inventory of infringing products), or evade process," ECF No. 4 at PageID.29–30. *See N. Atl. Operating Co.*, 2015 WL 13542566, at *1–2. These are compelling reasons for which this Court will grant the TRO without notice. *See id.*; *see also* FED. R. CIV. P. 65(b)(1)(B); *FenF*, 2025 WL 2302134, at *2 (finding that *ex parte* relief without notice was proper because the defendant Chinese company was likely to destroy its records and assets if it received notice).

Furthermore, FenF's request to temporarily restrain Quingdao's assets is appropriate because Quingdao is a foreign company that "can readily transfer its assets out of the reach of the U.S. Courts"; and district courts "have inherent power to freeze defendants' assets" to prevent irreparable harm and "ensure that final equitable relief is collectible." *See FenF*, 2025 WL 2302134, at *5 (citing *Reebok Int'l Ltd. v. Marnatech. Enter.*, 970 F.3d 552, 559 (9th Cir. 1992)), and *USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 97 (6th Cir. 1992)).

- 11 -

### F. Bond

Lastly, "FenF asks for a bond in the amount deemed appropriate by the Court in view of the clear infringement by" Quingdao. ECF No. 4 at PageID.62. Because this Court does not yet have sufficient information to determine an appropriate amount, this Court will not require bond at this time but may revisit the issue at the preliminary-injunction stage. Under Civil Rule 65(c), this Court "court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." FED. R. CIV. P. 65(c). Although "this language appears mandatory, 'the rule in [the Sixth Circuit] has long been that the district court possesses discretion over *whether* to require the posting of security.'" *Appalachian Reg'l Healthcare, Inc. v. Coventry Health & Life Ins.*, 714 F.3d 424, 431 (6th Cir. 2013) (quoting *Moltan Co. v. Eagle–Picher Indus.*, 55 F.3d 1171, 1176 (6th Cir. 1995)). Without Quingdao's appearance, this Court lacks the benefit of its arguments on what amount would be proper to compensate for any potential wrongful restraint. Therefore, a bond will not be required at this time, and this Court may revisit the issue at the preliminary-injunction stage. *See id.*

### IV. CONCLUSION

Accordingly, it is **ORDERED**, that Plaintiff's *Ex Parte* Motion for a

Temporary Restraining Order, ECF No. 4, is hereby **GRANTED**. It is further

**ORDERED** that:

1.  Defendant Quingdao Cheng He Xin Dian Zi Shang Mao Co., Ltd, its agents, employees, attorneys, and those persons in active concert or participation with it, are **IMMEDIATELY ENJOINED** from advertising, offering for sale, or selling toe stretchers and spacers having the configuration of Plaintiff's GEMS® product;

2.  Defendant, its agents, employees, attorneys, and those persons in active concert or participation with it, are **IMMEDIATELY ENJOINED** from transferring any of its assets. Defendant may petition this Court to modify or dissolve this asset restraint; and

3.  FenF shall attempt to notify Defendant of the issuance of this order by sending it, along with a copy of the complaint, TRO motion, and brief, via overnight courier to No. 486 Qingshi Road, Huanxiu Street, Jimo District, Qingdao City, Shandong Province, China, 266200, **on or before January 30, 2026.**

4.  Plaintiff shall file proof of service or updates on its efforts to effectuate service with this Court as necessary.

It is further **ORDERED** that:

1.  The parties shall appear before this Court for a Preliminary Injunction

hearing on **February 5, 2026, at 11:00 AM**;

2. Defendant shall file and serve any response papers in advance of the Preliminary Injunction Hearing **on or before February 3, 2026**;

3. Plaintiff shall file and serve any reply papers in advance of the preliminary injunction hearing **on or before February 4, 2026**;

4. Prior to the Preliminary Injunction hearing, Defendant may move to vacate or modify the temporary restraining order on two business days' notice to Plaintiff; and

5. No security or bond shall be required under Civil Rule 65(c) at this time.

**IT IS SO ORDERED.**

**This is not a final order and does not close the above-captioned case.**

*/s/Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: January 28, 2026